**FOREST HILLS EARLY LEARNING CENTER, INC., et al.**

v.

**William L. LUKHARD, etc.**

**Civ. A. No. 80–0116–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

April 22, 1982.

John Vanderstar, Covington & Burling, Washington, D. C., Hullihen W. Moore, Dennis O. Laing, Christian, Barton, Brent & Chappell, Richmond, Va., for plaintiffs.

Dennis G. Merrill, Asst. Atty. Gen., Richmond, Va., for defendants.

## OPINION

WARRINER, District Judge.

Section 63.1–196.3 of the Virginia Code exempts church-run day care centers from the licensing standards otherwise required by § 63.1–196. Plaintiffs, three secular day-care centers, charge that the exemption violates the establishment clause of the First Amendment of the United States Constitution, the equal protection clause of the Fourteenth Amendment, and Article I, Section 16, of the Virginia Constitution. Plaintiffs and defendant have fully briefed their cross-motions for summary judgment. Additionally, the Virginia Council of Churches filed a brief *amicus curiae* in support of plaintiffs' motion; the Christian Law Association filed a brief *amicus curiae* in support of defendant's position.

Child-care centers are regulated pursuant to certain provisions in §§ 63.1–195 through 63.1–219 of the Virginia Code. The statutes provide, *inter alia*, that the applicant supply a description of the activities to be engaged in, § 63.1–197; that prior to licensing the Commissioner of Welfare investi-

gate the activities, services, facilities, financial responsibility, character, and reputation of the applicant, with the representatives of the Commissioner granted the right to investigate and inspect all of the applicant's facilities, books and records, § 63.1–198; that the Commissioner shall issue the license upon determining that the applicant has made adequate provision for activities, services and facilities as "are reasonably conducive to the welfare of the children over whom he may have custody or control" and upon determination that the applicant is of good character and reputation, § 63.1–199; that the Commissioner and the State Board of Welfare have the right to inspect at all reasonable times all of the facilities, books, and records of the center and to interview any employee of the center, § 63.1–210. Additionally, § 63.1–202 grants the State Board of Welfare the power to promulgate standards and policies for the activities, services, and facilities of the centers.

Under the current standards promulgated pursuant to § 63.1–202, the applicant must file an outline of the center's program and a statement of who is responsible for policy making; the Commissioner may recommend activities, services and facilities to be employed; the sponsors must "define in writing the purpose and scope of services under which the center is to operate"; the Department may inquire into the financial condition of the center, and the center must reveal the amount of any public contributions; the Department is to judge whether conditions exist that would be hazardous to the "moral welfare" of the children; the child-care supervisor shall "encourage exploring, experimenting and questioning"; and disciplinary practices are subject to the requirements of the Board.

In 1979, § 63.1–196.3 was enacted, making it unnecessary for child-care centers operated under the auspices of a religious institution to comply with the State's licensing requirements. Likewise, these centers would not be subject to compliance with the Department of Welfare standards. The church-run centers are not wholly unregulated, however. Section 63.1–196.3 requires that prior to beginning operation and annually thereafter the religious institution must file with the Commissioner a statement of intent to operate a child care center, a certification that the child care center has disclosed to the parents or guardians of the children in the center the qualifications of the personnel employed therein, and documentary evidence of inspections by the health department and the fire marshall. If the evidence of compliance is not filed, the Commissioner may take appropriate action, including a suit to enjoin the operation of the center. Additionally, any parent or guardian of a child in the center who believes that the center is not in compliance with these provisions may report the same to the Department of Welfare, to the health department, or to the local fire marshall. Each of these agencies may then inspect the child care center for non-compliance and may thereafter take appropriate action, including a suit to enjoin the operation of the center. A church-run center may voluntarily comply with the licensing statutes rather than operate under the exemption statute.

■ The parties agree that for the exemption statute to be constitutional under a challenge that it violates the establishment clause of the First Amendment, it must pass a three-fold test: (1) the statute must have a secular legislative purpose; (2) its principal or primary effect must be one that neither advances nor inhibits religion; and (3) it must not foster an excessive governmental entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). The disagreement in this suit largely centers on the first prong of the test. Plaintiffs argue that the exemption statute has no secular purpose and was passed on the urging of fundamentalist religious groups. Plaintiffs rely on paragraph 6 of the affidavit of James Payne, Associate Executive Secretary of the Virginia Council of Churches, who monitored the legislation:

The exemption of church day-care centers provided by House Bill 276 was supported, almost exclusively, by fundamentalist religious groups. At no point in any of the proceedings was any secular reason advanced for the exception. The

sole argument made by the proponents of the exemption was that because the operation of the day-care centers was to be conducted by religious organizations, these day-care centers should be exempt from the licensing required of other centers.

Defendant argues that the secular purpose of the statute was to avoid a violation of the free exercise clause of the First Amendment. Defendant Lukhard states in paragraph 3 of his affidavit:

[P]rior to the 1979 session of the General Assembly a number of churches who operated child care centers subject to licensure by this Department voiced their opinion to me and members of my staff that the requirement of licensure of their respective facilities was a violation of their rights guaranteed by the First Amendment to the United States Constitution, and by Article I, Section 16, of the Virginia Constitution.

In arguing their positions, both plaintiffs and defendant devote a substantial portion of their briefs to the question of whether, absent the exemption, the licensing requirements would violate the free exercise of religion clause of the First Amendment. The Court wishes to make clear at the outset that such is not the question before the Court in this case. The question before the Court is whether the exemption violates the establishment clause of the First Amendment.

■ The Court rejects the proposition that the State walks a tightrope between the establishment clause and the free exercise clause. The State is not placed in such a precarious position by the First Amendment that the enactment of any legislation affecting churches subjects the State to the hazard of violating either the establishment clause or the free exercise clause. The First Amendment forbids both governmentally established religion and government interference with religion. Between these boundaries, however, "there is room for

play in the joints productive of a benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference." *Walz v. Tax Commission*, 397 U.S. 664, 669, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970).

In support of the argument that the exemption statute lacks a secular legislative purpose, plaintiffs submit a March 1978 opinion of the Attorney General which concluded that the child-care standards did not violate the free exercise clause. In light of this opinion, plaintiffs represent, the purpose of the exemption could not be to avoid a free exercise clause violation. Plaintiffs additionally argue that the fundamentalist religious groups' support of the exemption, in and of itself, indicates the absence of a secular purpose.

■ The Court is not persuaded by these arguments that the statute does not have a secular purpose. The legislature is, of course, not bound by opinions of the Attorney General, and, as defendant points out, the act of requesting an opinion indicates the concern over the issue. The argument that the exemption was supported by fundamentalist religious groups carries little, if any, weight in establishing the absence of a secular legislative purpose. Certainly fundamentalist religious groups have a right to participate in the political process fully as much as the Virginia Council of Churches or the Communist Party or any other group.[1] *Walz v. Tax Commission*, 397 U.S. 664, 670, 90 S.Ct. 1409, 1412, 25 L.Ed.2d 697 (1970). Additionally, a statute may support a secular purpose that harmonizes with a religious purpose. *Harris v. McRae*, 448 U.S. 297, 319, 100 S.Ct. 2671, 2689, 65 L.Ed.2d 784 (1980); *McGowan v. Maryland*, 366 U.S. 420, 442, 81 S.Ct. 1101, 1113, 6 L.Ed.2d 393 (1961).

Defendant's position is that the entanglement between the church and the State in applying the child-care licensing standards to centers operated by religious institutions

1. It is curious how so-called "mainline" church groups sound off on political questions with great vigor and force and to the accompaniment of almost universal media praise but when a fundamentalist group voices its concerns one would judge from the shrieks of dismay and anger that the wall between church and state had just been bulldozed.

is extensive. Thus, the secular legislative purpose in granting the exemption is to avoid entanglement with religion. Through the exemption statute, the State hoped to prevent possible litigation of any free exercise claims against the licensing requirements and at the same time to assure the welfare of children in church centers by means which intrude as little as possible upon the activities of the church.

■ The interest of a State "in complying with its constitutional obligations may be characterized as compelling." *Widmer v. Vincent,* —— U.S. ——, 102 S.Ct. 269, 275, 70 L.Ed.2d 440 (1981). Logic supports the conclusion that if regulations arguably violate the free exercise clause it is justifiable for the State to employ a less intrusive means of regulating the church-run centers. On this basis the Court concludes that the exemption statute has a secular legislative purpose. It is not aimed at establishing, sponsoring, or supporting religion. *Walz v. Tax Commission,* 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970). Rather, it is aimed at leaving religion alone.[2]

■ The statute also must not have the primary effect of advancing religion in order to survive an establishment clause challenge. While church-run centers may or may not derive some economic benefit from the exemption,[3] this case is clearly distinguishable from cases holding that the primary effect of an exemption is to benefit religion. *See, e.g., Committee for Public Education v. Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973) (tuition credits for parents of children attending parochial school have primary effect of promoting religious activity). The Supreme Court has consistently held that a statute is not unconstitutional under the establishment clause simply because it results in an incidental benefit to religion. *Roemer v. Mary-*

*land Public Works Board,* 426 U.S. 736, 746–47, 96 S.Ct. 2337, 2344–45, 49 L.Ed.2d 179 (1976); *Committee for Public Education v. Nyquist,* 413 U.S. 756, 771, 93 S.Ct. 2955, 2964, 37 L.Ed.2d 948 (1973); *Walz v. Tax Commission,* 397 U.S. 664, 671–72, 90 S.Ct. 1409, 1412–13, 25 L.Ed.2d 697 (1970).

The Court rejected the argument that a tax exemption to churches has the primary effect of aiding religion in *Walz v. Tax Commission,* 397 U.S. at 675–76, 90 S.Ct. at 1414–15, stating:

> The grant of a tax exemption is not sponsorship since the government does not transfer part of its revenue to churches but simply abstains from demanding that the church support the state.

This reasoning applies equally to the case at bar. The State provides no funds to the church-run day care centers; any economic benefit is remote, speculative, and incidental to the primary purpose of avoiding entanglement with the church-run centers.

■ The exemption statute is clearly valid under the third prong of the Lemon test. In *Walz v. Tax Commission,* 397 U.S. at 675, 90 S.Ct. at 1414, the Court compared exemption and taxation:

> In analyzing either alternative, the questions are whether the involvement is excessive, and whether it is a continuing one calling for official and continuing surveillance leading to an impermissible degree of entanglement.

The exemption statute results in less entanglement between the church and the State than would result from requiring licensure of the church-run centers. Accordingly, the Court holds that the exemption statute passes all three prongs of the Lemon test and does not violate the establishment clause of the First Amendment of the United States Constitution.

---

**2.** Plaintiffs argue that Walz is distinguishable from the case at bar. One of the major reasons for upholding the exemption in Walz was that the exemption extended to a broad class of non-profit organizations, not to churches only. Here, in contrast, the exemption is provided only to churches. However, given the secular legislative purpose for the exemption, the State had no reason to extend the exemption beyond the church-run centers.

**3.** On the issue of the economic effect of the exemption statute, see the previously published opinions in this case: 480 F.Supp. 636 (E.D.Va. 1979); 487 F.Supp. 1378 (E.D.Va.1980), *vacated,* 642 F.2d 448 (4th Cir. 1981).

■ Likewise, the statute does not violate the equal protection clause of the Fourteenth Amendment. The State has a compelling interest in complying with its constitutional mandates and with the U. S. Constitution. *Widmer v. Vincent,* —— U.S. at ——, 102 S.Ct. at 275. The classification is relevant to achieving this objective. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Finally, for the reasons stated above, the statute does not violate the establishment of religion clause of Article I Section 16, of the Virginia Constitution.

A recent law review article entitled "The State and Sectarian Education: Regulation to Deregulation," 1980 *Duke L.J.* 801, notes that State regulations of parochial schools have been attacked recently in several States and sees this attack as part of a current nationwide fundamentalist movement in opposition to any State regulatory authority over sectarian schools. The author considers this trend dangerous, constituting the ceding to religious organizations of the State's constitutional authority, and perhaps obligation, to insure certain minimal standards for all children. However, the wisdom in a policy to regulate or to deregulate schools or day care centers is one for the legislature, not for the courts. The courts can only determine whether the actions of the legislature are within the boundaries outlined by the Constitution. The statute enacted by the legislature in this case does not transgress the limitations of the First Amendment. Accordingly, summary judgment will be granted defendant.

And it is so ORDERED.